UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANABELLA SANTIZO, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09cv00151 SNLJ |
| | ) | |
| ALLSTATE PROPERTY & CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This matter is before the court on defendant's Amended Motion for Summary Judgment, #43, filed April 22, 2010. Responsive pleadings have been filed, and this matter is now ripe for disposition.

**I. Statement of the Case**

Plaintiff Anabella Santizo, a Missouri resident, filed a petition for breach of an insurance contract and vexatious refusal to pay against her insurer, defendant Allstate Property & Casualty Insurance Company (Allstate), on December 17, 2008, in the Twenty First Judicial Circuit of Missouri. Defendant Allstate, an Illinois corporation, subsequently removed the case to this Court on January 23, 2009 under diversity jurisdiction.

Plaintiff owned and lived in her residence at 315 N. Dellwood Road, St. Louis, Missouri, 63135. In May 2005, plaintiff purchased an insurance policy from defendant, insuring against fire loss, associated collateral damage, and loss of use and income. On June 16, 2008, plaintiff's residence was extensively damaged by a fire, and plaintiff allegedly suffered damages that reached the policy limit of $181,176. Plaintiff and her private adjuster, Dan Rudman, submitted

a report and proof of loss to defendant, which thereafter denied coverage for misrepresenting the value of the losses to plaintiff's personal property in the fire. Plaintiff filed this suit for vexatious refusal to pay claim damages, defendant thereafter filed a counterclaim for declaratory judgment seeking a declaration of no coverage, and after extensive depositions, defendant filed this amended summary judgment motion.

## II. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

Defendant Allstate argues that it is entitled to summary judgment because plaintiff's insurance policy expressly excludes coverage for "any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance," and plaintiff has allegedly concealed and/or misrepresented the value of her personal property claim. Defendant argues that plaintiff claimed her personal property was valued at $49,765.82, but this value is

2

belied by the fact that in the previous year, plaintiff filed a sworn bankruptcy petition in which she claimed her personal property was worth $2,810. Defendant further argues that plaintiff admitted in her deposition that the contents inventory she submitted to Allstate misrepresented the age and value of several items of personal property. Defendant additionally argues that even without plaintiff's admissions, the great disparity of values ascribed to her personal property in the insurance claim and bankruptcy proceedings would mandate a finding of misrepresentation as a matter of law. Finally, defendant argues that plaintiff should be judicially estopped from claiming the disparate values between this legal claim and the bankruptcy proceeding.

Plaintiff's deposition testimony reveals that some of her damaged personal property was purchased second-hand, rather than new as listed in her contents inventory report and her initial examination under oath. Plaintiff stated in her deposition that a number of pieces of furniture were purchased by her sister at Goodwill and garage sales, and her sister corroborated this assertion by testifying that she purchased the items for prices vastly lower than the values listed in the contents inventory report. For example, a loveseat listed in the proof of loss report on line 436 as $549.00 was purchased for "[m]aybe $50.00," a blue chair listed "new" on line 437 for $329.00 of the proof of loss statement was purchased used for "maybe $25.00" or "$35.00," and a chair listed as "new" on line 477 for $450.00 was purchased for "[p]robably $25.00."

Plaintiff argues that these disparate values merely reflect the different methods of valuation used in the insurance claim and the bankruptcy proceedings. In the bankruptcy proceedings, plaintiff used *actual cash value* to measure her assets, while in the proof of loss statements on the insurance claim, plaintiff used *replacement cost value* to measure her losses. Actual cash value is the replacement cost minus normal depreciation, or fair market value, while replacement cost value represents the cost of replacing an item with a new one of like kind.

3

Plaintiff avers that defendant Allstate did not request that plaintiff list the actual cash value of her personal property, nor did defendant reject her proof of loss statement listing the replacement cost values. Plaintiff further asserts that she had specifically contracted with Allstate for *replacement cost value* insurance, but despite plaintiff's arguments for separate valuations, there still exist representations of new purchased items, when in fact they were purchased second-hand. Whether these representations were misrepresentations that would exclude coverage requires a look at the insurance policy.

"The interpretation of an insurance policy is a question of law." *Kearns v. Interlex Ins. Co.*, 231 S.W.3d 325, 330 (Mo.Ct.App. 2007)(citing *Blanks v. Farmers Ins. Co.*, 97 S.W>3d 1, 4 (Mo.Ct.App. 2002)). The contractual language shall be afforded its plain and ordinary meaning. *Id*. (citing *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1999)). Here, plaintiff's policy expressly excludes coverage for "any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance," and these sorts of misrepresentation clauses are valid and enforceable in Missouri. *See Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422-23 (8th Cir. 2007)(citing *Childers v. State Farm Fire & Cas. Co.*, 799 S.W.2d 138, 141 (Mo.Ct.App. 1990)). Defendant must sufficiently establish the existence of the misrepresentation in order to be free from liability under the policy. *See Kearns v. Interlex Ins. Co.*, 231 S.W.3d 325, 331 (Mo.Ct.App. 2007)(citing *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 857 (Mo.Ct.App. 1999).

Plaintiff's insurance policy contract includes "Personal Property Protection" with a "Reimbursement Provision." The Reimbursement Provision provides that Allstate "will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property," but the Personal Property

4

Reimbursement payment will not exceed "the amount actually and necessarily spent to repair or replace the property *with similar property of like kind and quality*." Thus, if plaintiff replaces furniture purchased second-hand with "similar property of like kind and quality," she cannot claim reimbursement for brand new furniture, but only for used furniture of similar age and condition.

The first problem, however, is that plaintiff represented on her contents inventory report that some of her furniture was purchased "new," when it was actually purchased second-hand. In fact, plaintiff valued certain second-hand items at prices up to ten times higher than what she or her sister paid for them. Based on this information alone, defendant Allstate has sufficiently established the existence of a misrepresentation that excludes coverage under the wording of the policy.

There is also considerable support to grant summary judgment based on the unreasonable disparity between plaintiff's personal property valuations on her insurance claim and her bankruptcy filings. On February 14, 2007, plaintiff filed a petition of bankruptcy and declared in bankruptcy court that her personal property had a value of no more than $2,810, and just a year and a half later, on August 8, 2008, plaintiff submitted a statement of proof of loss of $49,765.82 for damage to her personal property. Even assuming that the bankruptcy valuation used actual value and the proof of loss valuation used replacement value, the difference of $46,955.82—or the difference between new purchase price and depreciated actual value—represents an unbelievable difference in the valuation of her personal property. Absent evidence of a mistake on the proof of loss, a mistake during the bankruptcy declaration, or a great number of purchases between February 2007 and August 2008, this disparity is much too great for a jury to find anything but a misrepresentation in the proof of loss.

5

The Eighth Circuit has previously held that where "[n]o rational jury would be able to reconcile the difference between [an insured's] personal property in the bankruptcy and in the insurance claim less than a year later," it is only reasonable to infer that the insured made a material misrepresentation in submitting her personal property claim. *Liberty Mut. Fire Ins. Co.*, 486 F.3d at 422-23. In *Liberty Mutual*, the plaintiff/insured submitted a proof of loss to her insurance provider, claiming $93,077.19 in personal property damages, but declared only $7,340.00 worth of personal property in her bankruptcy petition a year earlier. The Eighth Circuit held that the evidence was insufficient as a matter of law to support the plaintiff's claim against the insurance company, reasoning that even if her "insurance claim was based solely on replacement cost, the vast difference in the two values is still too great to be reconciled based on the record." *Id*. at 423. Thus, "[t]he only reasonable inference on the evidentiary record is that [she] made a material misrepresentation in submitting her personal property claim of $93,077.19." *Id*.

A case with similar circumstances was decided in the Eastern District only a year later. In *Mathes v. Mid-Century Ins. Co.*, 2008 WL 2439744 (E.D.Mo.), the plaintiff submitted a proof of loss of $144,000 in personal property, but only six months earlier plaintiff declared in bankruptcy proceedings that his personal property amounted to $800.00. The plaintiff stated that the disparity between the two claims was attributable to the distinction between replacement cost and actual cost, and the Court ultimately found this explanation unreasonable. The Court held that there was "insufficient evidence for a jury to find that [the] plaintiff did not knowingly and/or willfully conceal or misrepresent any material fact or circumstance relating to the Policy before or after the loss." *Id*. at 3.

Plaintiff argues that these cases are easily distinguishable because here, defendant's personal property adjuster established a $75,000.00 loss reserve for personal property after she viewed plaintiff's fire losses. That fact is irrelevant, however, because it does not rebut or refute the disparity between the bankruptcy valuation and the insurance claim valuation. Plaintiff further argues that *Liberty Mutual* and *Mathes* do not discuss the insurer's burden to meet the eight elements of proof of fraudulent misrepresentation, or that an insured's opinion of the value of property cannot be the basis of a fraud claim. This, however, is not the standard, nor is this a fraud claim. This is a vexatious refusal to pay claim, and defendant must only "sufficiently establish the existence of the misrepresentation in order to be free from liability under the policy." *Kearns v. Interlex Ins. Co.*, 231 S.W.3d at 331. The existence of a misrepresentation is established by the conflicting sworn statements that plaintiff made regarding the age and quality of certain items of personal property. There is no evidence that plaintiff made thousands of dollars worth of purchases in the year since her bankruptcy proceedings, and plaintiff has not presented any evidence to suggest a mistake in the bankruptcy filings, nor in her proof of loss.

For the foregoing reasons, this Court concludes as a matter of law that plaintiff knowingly or willfully concealed or misrepresented a material fact or circumstance relating to the insurance policy before or after the loss, and there are no material facts in dispute that would permit a jury to find that Allstate's refusal to pay was without reasonable cause. Accordingly, defendant's amended motion for summary judgment shall be granted.

Dated this __9th__ day of July, 2010.

_____
UNITED STATES DISTRICT JUDGE